**IOWA SOAP CO. v. HUSTON, Collector of Internal Revenue.\***

No. 185.

District Court, N. D. Iowa,

Cedar Rapids Division.

Jan. 15, 1936.

Gamble, Read & Howland, of Des Moines, Iowa (Hirsch, Riepe & Wright, of Burlington, Iowa, of counsel), for plaintiff.

E. G. Dunn, U. S. Atty., and Wm. B. Danforth, Asst. U. S. Atty., both of Mason City, Iowa, and Walter R. Hutchinson, Asst. U. S. Atty., of Cedar Rapids, Iowa, and Paul S. McMahon, Sp. Asst. Atty. Gen., for defendant.

SCOTT, District Judge.

Now on the 12th day of November, 1935, plaintiff, Iowa Soap Company, a corporation, filed its bill of complaint in equity against Charles D. Huston, individually, and as Collector of Internal Revenue for the District of Iowa, defendant, in the Cedar Rapids Division of the Northern District of Iowa, praying for injunctions preliminary and final restraining the defendant from further assessing, levying or imposing, collecting or attempting to collect, processing taxes under the Revenue Act of 1934, § 602½ (a), 26 U.S.C.A. § 999 (a), and that it be adjudged and declared that said section of said act and all levies and impositions thereunder are unconstitutional.

On the 5th day of December, 1935, in pursuance of a regular assignment by agreement of parties, the cause came on for hearing at the December motion day as adjourned at the United States courtroom in Dubuque, Iowa, in this District, and thereupon the cause was argued upon plaintiff's application for a preliminary injunction, and the defendant's motion to dismiss the bill, and the cause having been fully argued upon all matters under hearing was submitted, subject to the filing of briefs within a time limited, and all briefs having been filed, said cause stood finally submitted on said motions.

*No opinion filed in Circuit Court of Appeals. Certiorari denied 56 S. Ct. 677, 80 L. Ed. ——.

And now, on this 15th day of January, 1936, the court being advised in the premises, finds that the court has full jurisdiction of the cause and of the parties; that the equities of the cause are with the plaintiff. That there are peculiar circumstances in the case as shown by the plaintiff's verified bill and supporting papers, which were not answered or resisted by the defendant otherwise than through his motion to dismiss, which entitled the plaintiff to equitable relief inasmuch as the plaintiff has no adequate or complete remedy at law.

And the court further finds the following additional facts:

1. The plaintiff is an Iowa corporation having its principal place of business in the city of Burlington, Iowa, and engaged in the manufacture and sale of soap and allied products, with manufacturing plants at Burlington, Iowa, and Camden, N. J. All its manufacturing operations are intrastate in character. It has been engaged in business for a number of years and has large investments in physical properties and enjoys an extensive business, patronage, and good will.

2. The defendant is a citizen of the state of Iowa residing in the city of Cedar Rapids, Iowa, in the Northern District thereof, and is the Collector of Internal Revenue for the District of Iowa. By virtue of his office, the defendant is required and empowered by law to collect all taxes due to the United States of America from residents in the said District of Iowa, and to enforce payment of such taxes and fines and penalties relating thereto.

3. This suit is of a civil nature in equity and arises directly under the Constitution and laws of the United States. The amount immediately in controversy herein exceeds the sum of $3,000, exclusive of interest and costs. An actual and immediate controversy exists between the plaintiff and the defendant.

4. The court has jurisdiction of the subject-matter and of the parties to this suit.

5. On May 10, 1934, the President of the United States approved an act of Congress of the United States known as the "Revenue Act of 1934." Section 602½ of the said Revenue Act of 1934 (26 U.S.C.A. § 999) imposes upon the "first domestic processing" of certain oils, an excise tax. Among other oils, upon the first domestic processing of which is imposed such a tax, is coconut oil. Upon coconut oil (other than Philippine coconut oil) the tax is 5 cents per pound. Upon Philippine coconut oil the tax is 3 cents per pound. Section 602½ (a) of the act defines the meaning of the term "first domestic processing." The said section provides: "All taxes collected under this section with respect to coconut oil wholly of Philippine production or produced from materials wholly of Philippine growth or production, shall be held as a separate fund and paid to the Treasury of the Philippine Islands, but if at any time the Philippine Government provides by any law for any subsidy to be paid to the producers of copra, coconut oil, or allied products, no further payments to the Philippine Treasury shall be made under this subsection." The Philippine government has not provided by any law for any subsidy to be paid to the producers of copra, coconut oil, or allied products.

The act further provides for the making of monthly returns under oath by all persons liable to pay the processing taxes imposed; and also imposes severe fines and penalties for either failure to make the return or failure to make monthly payments of the tax; and makes provision for aid in the enforcement of payment of the tax by providing for the imposition of liens upon the property of the taxpayer and procedure against him by way of seizure, attachment, and distraint.

6. Coconut oil is an essential ingredient in the manufacture of soaps; and in carrying on its business the plaintiff has been in the past and now is compelled to use such oil. When in respect of such use the plaintiff becomes the "first domestic processor" of such oil, it is compelled to pay the processing tax imposed thereon by said section 602½, directly; and when such first domestic processing has been performed by some one other than the plaintiff and from whom plaintiff acquires such oil, the cost of such oil to the plaintiff is increased by the amount of the processing tax paid. The result is that the cost of coconut oil used by plaintiff in the manufacture of its finished products is increased by the amount of the processing tax thus paid on each pound of such oil.

Plaintiff has in the past used and now uses almost exclusively Philippine coconut oil. Because the tax on coconut oil, other than that of Philippine production, is higher, the effect of the act is to induce the use of Philippine coconut oil.

7. The plaintiff is not equipped nor financially able to engage in the manufacture and production of anything except soap and directly allied products. Its finished products are almost exclusively sold by it within the United States, in a market which is highly competitive, and wherein the price of soap is fixed by factors over which plaintiff has no control. Approximately 90 per cent. of all soap manufactured and sold within the United States is manufactured by three large concerns, each of which manufactures in large quantities not only in the market for the United States, but elsewhere in the world, soaps of all kinds and qualities and also edibles, such as cooking fats, cottonseed oil, derivatives, and other similar products; and as a result of such varied business, which is extensive and profitable, and because the foreign soap business of such concerns is not subject to the burden of the oil-processing taxes, such three large concerns are able to and do conduct a profitable business apart from domestic soap sales, and are able to and do manufacture and sell soap in the domestic market on a very low margin of profit or at cost or less, and thus practically maintain control of the domestic market price of soap. Because of these facts and other facts established by the pleadings and proof, plaintiff has been unable to pass on to its customers the increased cost of its finished products resulting from the imposition of the processing taxes on coconut oil.

8. During the ten-year period ending approximately in May, 1934, the plaintiff annually operated at a profit. During the last half of the year 1934, and the first ten months of the year 1935, the plaintiff has been unable to operate at a profit and has suffered a substantial operating loss. The processing taxes imposed by section 602½ of the Revenue Act of 1934, became effective on May 10, 1934. During said period that the plaintiff has sustained an operating loss its affairs have been prudently, economically, and efficiently conducted; and if during said period the plaintiff had not been compelled to pay the processing taxes exacted under said section 602½, it would have operated at approximately its normal profit.

During the period from May 10, 1934, to October 31, 1935, there was imposed upon the plaintiff a processing tax on Philippine coconut oil of $144,520.29.

The plaintiff has paid the foregoing processing tax; and in addition, during said period the plaintiff purchased of refineries Philippine coconut oil upon which the first domestic processing had been made by such refineries and the processing tax added to the normal cost thereof, with the result that the plaintiff during said period actually paid out an additional amount of $42,375, which represented the increase in the cost of such Philippine coconut oil paid by the plaintiff to such refineries. During the aforesaid period the plaintiff has thus directly and indirectly paid processing taxes imposed under said section 602½ in the total aggregate of $202,027.99.

All processing taxes thus paid by the plaintiff as aforesaid have been paid with borrowed money. The plaintiff is now indebted for borrowed money in the aggregate sum of $600,000, $350,000 of such debt being represented by current bank loans and $250,000 thereof being represented by serial notes maturing on February 15, 1937, and February 15, 1938. At the time of the submission of this cause on December 5, 1935, the plaintiff was continuing its operations at a loss, and will be compelled to borrow money with which to pay processing taxes for the month of October, 1935, and for succeeding months. Such continued borrowing will exhaust the plaintiff's open line of credit and the continuation of operation at a loss will result in the plaintiff being unable to refinance its existing indebtedness and seriously impair the plaintiff in its ability to continue in its business, and will ultimately result in the destruction of its business and the loss of its good will and its assets.

9. The plaintiff has sought administrative relief by the filing of claims for refund of the processing taxes paid and no such relief has been granted to the plaintiff and no refunds of any taxes paid have been made.

10. If injunctive relief is denied to the plaintiff, it will be compelled to pay the processing taxes imposed upon it for the month of October, 1935, which became due and payable on November 30, 1935, and as well will be compelled to pay processing taxes accruing in subsequent months; and will, in respect of such taxes, be remitted to the administrative relief provided for under the law. The plaintiff then will be remitted to a multiplicity of claims and suits with no assurance of speedy action thereon or speedy recovery of the taxes paid irrespective of whether plaintiff ultimately obtains a refund of such taxes.

11. Because of all of the circumstances herein set out the plaintiff does not have a plain, speedy, and adequate remedy at law for the recovery of processing taxes heretofore paid or payable in the future.

12. During the month of October, 1935, the plaintiff actually used in the manufacture of its finished products 239,284 pounds of Philippine coconut oil. In connection with such use of such oil, the plaintiff became the "first domestic processor" thereof, and hence became liable to pay a processing tax in the amount of 3 cents per pound on all such oil, which tax amounts, in the aggregate, to $7,178.52. Such tax was due and payable on or before November 30, 1935, and has not been paid by the plaintiff. In order to continue its business the plaintiff will monthly use substantially the same amount of Philippine coconut oil and will be subjected monthly to substantially the same amount of tax.

Under existing laws, the failure of the plaintiff to pay such tax due on or before November 30, 1935, and subsequently accruing similar taxes will result in the imposition upon the plaintiff of penalties and interest and enforcement of payment of such tax together with penalties and interest, by the imposition of liens, distraints, attachments, levies, and other processes of law.

13. Section 602½ (a) of the Revenue Act of 1934 (26 U.S.C.A. § 999 (a), earmarks all taxes collected under subsection (a) as a separate fund to be held and paid to the Treasury of the Philippine Islands. The Philippine Independence Act (Act of January 17, 1933, see 48 U.S.C.A. §§ 1231 to 1247) was in full force and effect from and after January 17, 1933. On November 15, 1935, the government of the Philippine Islands was inaugurated and took office and entered upon its rights, privileges, powers, and duties as provided by the Constitution of the Philippine government, which Constitution was duly formulated and drafted and certified by the President of the United States, pursuant to the said Philippine Independence Act. From and after November 15, 1935, the Philippine Islands have been and now are a separate nation and commonwealth.

The court therefore finds and concludes as a matter of law that the plaintiff is entitled to a preliminary injunction as prayed, and in that connection that the allegations of the plaintiff's verified bill fully raise and present the question of the constitutionality of the act of Congress referred to therein, to-wit, section 602½ (a), Revenue Act of 1934, as applied to the facts in this cause, in so far as said act is intended and calculated to raise revenue for the benefit of a foreign state, and in so far as it is intended and is calculated to regulate and limit manufacture within the several states of the United States. And the court being of opinion that the said act of Congress in the respect named is not within any power granted by the Constitution, and particularly in so far as it attempts to regulate and limit manufacture within the several states, contravenes the Tenth Amendment to the Constitution of the United States which provides that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." And the court being further of opinion that the allegations of the verified bill and supporting papers disclose peculiar and particular equitable facts and circumstances present rendering all legal remedy inadequate in addition to the question of the constitutionality of the Congressional Act in question, that is to say, that plaintiff would be subject to great delay in recovering any assessment, tax, or excise, illegally exacted; that it is highly probable that plaintiff in any attempt to recover must await appropriations by Congress to that end; that in the meantime plaintiff would be subjected under the terms of the act to severe penalties; that plaintiff would be in the circumstances threatened with the necessity of a multiplicity of suits; that in view of the competition of the sale of plaintiff's products in connection with its business the integrity of plaintiff's business would be threatened and burdens and charges upon its physical properties created; that if defendant be not enjoined immediate and continuing irreparable loss and damage will result to the plaintiff, pending the final determination of the legality of said tax.

And the court being advised in the premises finds that the defendant's motion to dismiss is without merit and the same is hereby ordered overruled, to which ruling the defendant duly excepts.

It is ordered, adjudged, and decreed, that a preliminary injunction be and is hereby granted plaintiff against the defendant, Charles D. Huston, individually, and as Collector of Internal Revenue for the District of Iowa, his agents, servants, employees and attorneys, restraining him

and them from (1) attempting to assess against, or to demand or collect from, the plaintiff, such taxes now due or to become due, whether by notice, distraint, levy or action at law or in equity; (2) imposing, or giving notice of intention to impose, any lien upon the property of the plaintiff, whether real or personal; (3) in any other manner collecting, or attempting to collect, such taxes under or pursuant to the act in question, pending final hearing and final decree in this cause.

It is ordered that said preliminary injunction issue upon the plaintiff giving bond conditioned according to law, with good and sufficient surety or sureties in form and tenor approved by the court, in favor of the defendant in the penal sum of $30,000.

It is further ordered, with the consent of plaintiff, that a temporary injunction be, and is hereby, granted to defendant against the plaintiff, its board of directors, officers, agents, and employees, restraining it and them from selling, encumbering, or otherwise disposing of its real estate, or any interest therein, or from selling, encumbering, or otherwise disposing of any of the other property or assets of said plaintiff except in the ordinary and usual course of the conduct of the business of said plaintiff.

It is further ordered that said preliminary injunction against the defendant and said temporary injunction against the plaintiff remain in full force and effect until further order of this court.

It is further ordered that an exception is allowed the defendant to the entry of this decree.